# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| **BRENDA K. BLACKWELDER** | * | **DOCKET NO. 06-0564** |
| **VERSUS** | * | **JUDGE JAMES** |
| **COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT & RECOMMENDATION

Before the court is claimant's petition for review of the Commissioner of Social Security's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## Background & Procedural History

Brenda K. Blackwelder filed applications for Disability Insurance Benefits and Supplemental Security Income payments on September 12, 2002, and September 5, 2002, respectively. (Tr. 44-47, 222-224). She alleged disability since August 15, 2002, due to a neck injury, surgery, fibromyalgia, her left knee, and lower back. (Tr. 44, 68). The claims were denied at the initial stage of the administrative process. (Tr. 31-36, 225). Thereafter, Blackwelder requested, and received a February 15, 2005, hearing before an Administrative Law Judge ("ALJ"). (Tr. 356-369). However, in an April 18, 2005, written decision, the ALJ determined that Blackwelder was not disabled under the Act, finding at Step Four of the sequential evaluation process that she retained the residual functional capacity to return to past

relevant work as an insurance clerk and receptionist. (Tr. 14-24). Blackwelder appealed the adverse decision to the Appeals Council. Yet, on March 3, 2006, the Appeals Council denied Blackwelder's request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 6-8).

On March 31, 2006, Blackwelder sought review before this court. She alleges the following errors:

(1) the Commissioner's decision is not supported by substantial evidence; and

(2) the Commissioner failed to determine that there are jobs available in significant numbers in the economy that plaintiff could perform, and that she could maintain such jobs.

### **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340,

343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

### **Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

 (1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

 (2) An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

 (3)  An individual whose impairment(s) meets or equals a listed impairment in

> [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## **Analysis**

The ALJ found at Step Two of the sequential evaluation process that Blackwelder suffered from severe impairments of status post anterior cervical discectomy and fusion C5-C6, varicose veins, early osteoarthritis of the knees, and obesity. (Tr. 19-20, 23). However, the ALJ concluded that the impairments were not severe enough to meet or medically equal any of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. (Tr. 19, 26).

The ALJ next determined that Blackwelder retained the residual functional capacity for

4

sedentary work. (Tr. 22, 24).[1] Plaintiff contends that the ALJ's residual functional capacity assessment is not supported by substantial evidence. Specifically, she challenges the ALJ's finding that her fibromyalgia, low back problems, depression, headaches, and gastroesophageal reflux disease ("GERD") do not significantly affect her ability to work (*i.e.* that they are non-severe impairments).[2] However, the undersigned finds that there is substantial record evidence to support the ALJ's determination.

Despite being diagnosed with fibromyalgia in 1990, plaintiff continued to work until 2002. (*See*, Tr. 69, 219). The alleged severity of this condition is belied by the associated mild and sporadic treatment: exercise, rest when possible, and Aleve. (Tr. 219, 226). Plaintiff's GERD is controlled by medication. (Tr. 218-220). Likewise, medication has reduced the frequency of plaintiff's intense headaches to once every three weeks. *Id.* With regard to Blackwelder's complaints of low back pain, lumbar x-rays from October 16, 2002, showed no evidence of disc space narrowing or spur formation. (Tr. 191). Her facet joints appeared intact without degenerative changes. *Id.* As for depression, Blackwelder was under the care of Dr. Patrick Sewell. (Tr. 188). On June 28, 2001, Sewell stated that Blackwelder responded well to medication, and was not depressed in a clinical sense. *Id.* He opined that her mental condition

---

[1] Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

[2] When as here, the ALJ has determined that the claimant suffers at least one severe impairment, he must then proceed to consider the combined impact of all medically determinable impairments in the remaining steps of the sequential analysis. 20 C.F.R. §§ 404.1523 & 416.923.

5

did not prohibit her from functioning in an employment setting. (*See*, Tr. 188).

The ALJ's assessment of plaintiff's remaining impairments is supported by the October 16, 2002, consultative examination performed by orthopedic surgeon, Robert Holladay, M.D. (Tr. 189-190). The ensuing report reveals that Blackwelder ambulated without a cane, crutch, walker, or back support. *Id*. Movement of the upper extremities caused pain at the base of the neck and between the shoulder blades. *Id*. Straight leg raise was negative to 90 degrees. *Id*. The left knee had some crepitation as compared to the right. *Id*. Her gait was without a limp, and her balance and station were good. *Id*. Dr. Holladay diagnosed chronic neck pain, postoperative anterior cervical discectomy and fusion C5-C6, obesity, mild chondromalacia of the left knee, and contracture muscles of the left calf. *Id*. There was no evidence of abnormal neurologic findings. *Id*. Holladay opined that Blackwelder was capable of sitting and using her upper extremities for grasping, fine manipulation, pushing and pulling and reaching at desktop level. *Id*. She could occasionally reach overhead. *Id*. She would have difficulty with prolonged standing or walking. *Id*.[3]

Plaintiff argues that the ALJ failed to properly consider the effects of her obesity. However, this argument overlooks the fact that the ALJ's decision was premised upon Dr. Holladay's opinion that plaintiff retained a residual functional capacity consistent with sedentary work despite multiple diagnoses, *including obesity*. (*See*, 189-190).

Plaintiff contends that the ALJ should have credited the findings of consultative examiner, Rel Gray, M.D. Plaintiff was examined by Dr. Gray on March 7, 2005, at the request of her attorney. (Tr. 218-220). Dr. Gray concluded that Blackwelder suffered multiple severe

---

[3] Dr. Holladay's assessment did not contemplate plaintiff's varicose veins. However, the medical record is devoid of any limitations specifically stemming from this impairment.

and severely disabling medical problems. *Id*. He stated that given her chronic physical, mental, and emotional problems, she would never be able to be gainfully employed in any capacity. *Id*.

A physician's statement that a claimant is "disabled" or "unable to work" is not a medical opinion, and is not afforded any special significance. 20 C.F.R. § 404.1527(e); *see also, Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). To the extent that plaintiff argues that the ALJ should have considered the factors set forth in 20 C.F.R. 404.1527(d) before rejecting Dr. Gray's statement, the court observes that Dr. Gray was not a treating physician, and his statement was not a medical opinion subject to § 404.1527(d). *Frank, supra*. Moreover, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). (citation omitted). The court finds no error in the ALJ's decision to favor the assessment of a consulting orthopedic surgeon over that of a consulting family practitioner regarding the impact of plaintiff's musculoskeletal impairments.[4]

Plaintiff contends that the ALJ did not adequately consider her allegations of pain. Pain is considered disabling under the Social Security Act only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir. 1990). The ALJ's decision as to the credibility of plaintiff's complaints of pain is entitled to considerable judicial deference if supported by substantial evidence. *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Factors that the ALJ may consider in evaluating the claimant's subjective complaints include: (1) claimant's daily activities; *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Anthony v. Sullivan*, 954 F.2d 289,

---

[4] The opinion of a specialist is generally accorded greater weight than that of a non-specialist. *Moore, supra* (citation omitted).

296 (5th Cir. 1992); *Reyes v. Sullivan*, 915 F.2d, 151, 155 (5th Cir. 1990); (2) medication the claimant takes for pain; *Anthony v. Sullivan, supra; Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir. 1990); (3) degree of medical treatment; *Villa v. Sullivan, supra; Nickerson v. Secretary of Health and Human Services*, 894 F. Supp. 279 (E.D. Tex. 8/3/1995)*;* (4) lack of medical opinions in the record indicating the claimant is precluded from performing the level of activity indicated by the ALJ; *Villa v. Sullivan, supra;* and (5) external manifestations of debilitating pain such as marked weight loss. *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *see also* 20 C.F.R. §§404.1529(C)(3)(I)-(vii), 416.929(c)(3)(I)-(vii) (1993).

The ALJ did not question that plaintiff suffered some pain; he only determined that plaintiff's allegations of disabling pain were not credible. (Tr. 22-23). The ALJ emphasized that the objective evidence revealed relatively mild and controllable symptoms. *Id.* Moreover, plaintiff acknowledged significant daily activities, including the ability to: make beds, slowly sweep the kitchen, wash clothes, dust, clean the sinks and commodes, grocery shop on a weekly basis, and attend church. (Tr. 100-101). Finally, the court observes that plaintiff reported her pain and associated medication to Dr. Holladay who nonetheless issued limitations consistent with the ALJ's determination. (Tr. 189-190).

In the aftermath of the ALJ's unfavorable decision, Blackwelder submitted additional evidence to the Appeals Council. This evidence constitutes part of the instant record – provided that it was new, material and related to the period before the ALJ's decision. *See, Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005); 20 C.F.R. § 404.970(b).[5] However, the potentially

---

[5] *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record. *See, Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia*, *Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs*., 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)). Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and

8

material portions of this post-decisional evidence (*i.e.* evidence that might have affected the outcome of the Commissioner's decision) do not appear related to the period prior to the ALJ's decision. This conclusion is supported by Dr. Rel Gray's November 6, 2005, letter wherein he states that Blackwelder's condition had worsened in the past eight months. (Tr. 301-303). Likewise, although Blackwelder was diagnosed with major depression in October 2005, she did not seek the precipitating mental health consultation until September 2005. (Tr. 252-261).[6] In sum, Blackwelder's new evidence does not assist her instant claims, but may provide support for a new application for SSI benefits.[7]

Plaintiff next complains that the ALJ failed to address whether she could maintain employment for a significant period of time. *See, Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). The Fifth Circuit has recently confirmed that remand for a determination of whether a claimant can maintain employment is not required where, as here: 1) the claimant did not assert that her condition would only periodically preclude her from working, and 2) did not offer medical evidence that her condition would intermittently prevent her from maintaining employment or functioning in the employment context. *Wise v. Barnhart*, 101 Fed.Appx. 950, 2004 WL 1372922 (5th Cir. 2004)(unpubl.).

At Step Four of the evaluative process, the ALJ found that plaintiff's residual functional capacity permitted her to return to her past relevant work as an insurance clerk and receptionist –

---

relevant to the pre-ALJ decisional period. *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

[6] Also, a November 10, 2005, vocational evaluation which concluded that Blackwelder could not maintain work on a consistent basis was premised upon medical opinions and vocational restrictions not adopted by the ALJ. (*See*, Tr. 245-251). Thus, it is not material.

[7] Blackwelder's insured status for Title II benefits expired on December 31, 2004.

9

as she previously performed those jobs and as the position of receptionist is generally performed in the national economy. (Tr. 23-24).[8] Plaintiff contends that she does not have the educational level to perform this position. However, she performed this job before, and the record is replete with evidence that she possesses the requisite cognitive skills. (*See*, Tr. 226-230, 102, 251, 188).

Finally, plaintiff complains that the ALJ failed to determine that there were jobs available in significant number in the national economy. However, at step four of the sequential evaluation process, the Commissioner is not required to determine whether a claimant's previous work exists in the national economy. *See, Barnhart v. Thomas*, 540 U.S. 20, 124 S.Ct. 376 (2003).

For the reasons stated above, the undersigned finds that the Commissioner's decision is supported by substantial evidence and is free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

---

[8] Past relevant work is defined as "the actual demands of past work or 'the functional demands ... of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987)(citing, Social Security Ruling 82-61).
  The position of receptionist is performed at the sedentary level. (Dictionary of Occupational Titles 237.367-038).

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 31st day of January, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE